Ruffin, Judge.
 

 The propriety of the instructions depends altogether upon the correctness of the assumption, that the gift, being by parol, was void as against the creditors, who had executions. For nothing can be more certain, than that the statute of limitations cannot run, until the right hath accrued, or the action arisen. I do not speak of the gift being void, as being fraudulent within the statute of 13
 
 Elia.
 
 It is indeed plaiuly so ; for it is past my conception, bow a father, although not indebted at the time nor for a long time after, can hoi
 
 *329
 
 iicstly give to an infant child, living with him, a slave a few days old,
 
 and honestly keep the possession of the
 
 slave, using her as his own, supporting her and several of her phildren through the long period of twenty-seven years, eight of which were those of pecuniary embarrassment, which ended in insolvency. Such a possession was so, manifestly deceptive fo the world, as to bo covenous and fraudulent as to his creditors, if it be said that it is doubtful, whether the father or the daughter liad the possession, that doubt is a fraud upon the donor’s creditors; to which Í should think it hard to make a Jury shut their eyes. The donee ought to have a clear, separate, and unequivocal possession — so that nobody could be cither deceived or mistaken.
 

 But the Court took that point out of the case, by informing the Jury that the gift was void, because it was by parol. So that we are to view the case, as if the daughter had such an exclusive, possession, as would indicate a
 
 bona fide
 
 gift. I confess that the best convictions of my understanding are opposed to the position, and that it is revolting to my feelings. Yet under the construction put upon our act of 1784,
 
 (Rev. c.
 
 225,
 
 scq.
 
 7,) I believe the Judge was right. I have not a doubt, that flic act was intended to be one of frauds and perjuries, and to declare that all conveyances of slaves, whether voluntary or for value, should be void to all intents and purposes. It, unfortunately, did not get that meaning put on it at first; and conveyances by parol, were held to be good between the parties. This has often been since lamented by several able Judges; and the Legislature has by successive acts attempted to correct it. The omnipotent one of 1806 goes to the root of the evil, as far as relates to gifts of slaves; and that of 1819,
 
 (Rev. c.
 
 1016,) was probably intended to embrace sales, though its words extend only to
 
 contracts to sell.
 
 One error naturally leads to another. When the act of 1784 was held not to avoid the contract altogether, it. seems
 
 *330
 
 {0 that it resulted in this — that it had no meaning whatever, in connexion with creditors. Possibly it |)p strained to supply the defect in the
 
 Stat.
 
 27 in favor of'
 
 purchasers;
 
 because that statute did not extend to personal chattels, and a purchaser from one in
 
 possession,
 
 (as the vendor must be,) of such a chattel ought not to be postponed to a prior voluntary alienee. But even this was a hard, very hard measure' of justice, where the gift had been
 
 bona fide,
 
 and by one not indebted, and the donee had taken and held the possession for a great length of time. It would be a fraud in the donor, greater than that committed in making the gift, to avoid it by a sale, upon any freak, ami after the donee had settled in life, reared a family', bred up a numerous progeny of the slaves, and got credit on them as his property. The express words of the English Statute compelled their Courts to put this interpretation on it, as to lands. But two of the most eminent of the Judges,
 
 Lord Mansfield
 
 and
 
 Lord Ellenborough,
 
 have expressed earnest complaints of the rule, which the letter of the statute imposed on them. I do not see a reason, why our Courts, without such a legislative mandate, but by mere construction, should have adopted it. But it has been by repeated decisions, and particularly, after able arguments, in the cases of
 
 McCree
 
 v.
 
 Huston,
 
 (3
 
 Murph.
 
 429,) and
 
 Watford
 
 v.
 
 Pitt.
 
 (Id. 468 ) In reference to creditors however, there was no necessity for a new rule
 
 •,
 
 because if the conveyance was not
 
 bona fule,
 
 their interests were sufficiently protected by the 13
 
 Eliz.
 
 and our own act of 1715.
 
 (Rev.
 
 c. 7,
 
 see.
 
 4.)
 

 When it was determined, that the gift was not merely void as a parol gift — that snch a gift was
 
 in form
 
 sufli-cientto pass the title — it seems to me, that the only thing then remaining, which ought, in reason to affect it, was, that it was founded in bad faith ; in other words, that it was
 
 fraudulent.-
 
 How could it be fraudulent as to creditors, when the donor had no creditors, at or near the
 
 *331
 
 'time of the gift; or if he had, he had likewise ten times as much other property as would satisfy them, and tiie * * , donee took immediate, exclusive and notorious possession
 
 i
 
 Without
 
 such
 
 possession in the donee, and such abi-Iity in the donor, the gift, tho’ made in the most approved and solemn form in writing, could not, and ought not to stand. With them, it ought to stand, in any form that will in law pass the title. For there is no medium, which my reason can appreciate as just, between those laws, which declare that stipulations, except in a certain form, shall not constitute a valid contract to any purpose, and those which declare a contract, in whatever form, void as against particular persons, to whose injury it was designed, or liad a tendency to operate. Yet, as it was obvious, that creditors were sufficiently secured before «gainst fraud, as the statute recited that many persons had been injured by secret deeds of gift, and for the want of formal bills of sale, and as the parties were said not to be within the mischief, it became necessary to put some other meaning on the act. Then came the construction, that a parol gift, good between the parties, and
 
 without fraud
 
 as to creditors, was nevertheless, as to the latter, void. Tiiis turns the act, into the legislative anomaly, of being neither a statute of frauds, nor of fraudulent conveyances. It avoids contracts which arc good, so far as their validity depends on the intent j and it avoids them in favor of a class of persons, having no more merit than he, the donor, has, against whom they are valid. As to the donor, the parol gift stands firm ; as to his creditor, it is void for want of form, and for that only. The consequence is, that a creditor, whose debt is contracted at any distance of time, and not on the faith of this property, may defeat the gift $ because, as to him, it is void for want of form, precisely as a pa-rol gift, since 1806, is void as against the donor himself. Even the death of the donor would not convert the gift into an advancement, as against a debt contracted
 
 *332
 
 thirty years afterwards, for tiie want of such a proviso as is contained in the third section of tiie statute of 1806, Thus the act is turned into a statute of frauds and perjuries, as relates to the creditor, while it is not so as to the donor, and while, the gift is
 
 sine mala fule
 
 witii re-spert to the yi bole world, being from a parent amply able to pay his debts, and made in the discharge of tiie first natural duty, that of advancing his child, who takes possession, and retains it for thirty years ! And wiiat is stranger still, if any thing can be, the same doctrine must, until tiie act of 1792,
 
 (Rev. c.
 
 363,) have been applied to parol
 
 sales;
 
 for gifts and sales were put upon the same footing. Yet such is tiie law, as it hath been too often adjudged for u^now to deny. Without mentioning other cases, it will be sufficient to cite tiie remarkable and leading ones of
 
 Knight
 
 &
 
 ux.
 
 v. Thomas, (1
 
 Hay.
 
 289,) and
 
 Sherman
 
 v.
 
 Russel.
 
 (1 N.
 
 C. Law Repos.
 
 467.) However erroneous the original construction may appear to our minds, at this day, it is too thoroughly settled to be disturbed. I am firmly convinced, that it was palpably erroneous. But I subdue myself into a practical obedience to the authority of a long train of the decisions of my predecessors, although my own understanding rejects the reasoning upon which they are founded, and I see them now productive of evils, which were not, and probably could not have been foreseen. The Court below was bound to lay down the law as it did, and this Court is bound to follow. And the act of 1820
 
 (Rev.
 
 c. 1055,) does not alter it. Probably the proviso was pointed solely at the . act of 1806, and intended to prevent possessions, under gifts absolutely void, from ripening into title. But it is more extensive, and embraces “
 
 the law
 
 then in force, which required all gifts of slaves to be in writing.” So that as to those against whom, by any law, a parol gift was invalid, a possession under it remained inoperative, by the express words of the act of 1820.
 

 Per Curiam. — Let the judgment below be affirmed-.